IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:07-CV-479-FL

| | |
|---|---|
| DONALD ROBINSON, )<br>)<br>Plaintiff/Claimant, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Donald Robinson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 26 September 2003, alleging disability beginning 14 July 2003. (R. 78-81, 145, 485-88). Both claims were denied initially and upon reconsideration. (R. 37-38, 50-54, 56-58, 489-94). A hearing before the Administrative Law Judge ("ALJ") was held on 8 December 2005, at which Claimant was

represented by a non-attorney and a medical expert ("ME") and a vocational expert ("VE") appeared and testified. (R. 15, 495-549). On 17 April 2006, the ALJ issued a decision denying Claimant's claims. (R. 12-24). On 10 August 2007, the Appeals Council denied Claimant's request for review. (R. 6-8). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained

2

his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform his past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In cases in which drug abuse or alcoholism on the part of the claimant is alleged, the ALJ is required to go beyond the five-step evaluation if he finds that the claimant is disabled:

> [I]f the ALJ finds the claimant disabled, the guidelines require the ALJ determine whether there is medical evidence of drug abuse and/or alcoholism. If the claimant is disabled and there is medical evidence of drug abuse and/or alcoholism, the ALJ must determine whether the claimant would still be disabled if he stopped using drugs or alcohol (i.e., whether the drug or alcohol addiction is a material factor contributing to the disability). If drug abuse and/or alcoholism is material, the claimant cannot be considered to be disabled, and is not entitled to or eligible for benefits.

*Sanders v. Apfel*, 2001 WL 114360, at *6 (W.D.N.C. Jan. 26, 2001) (unpublished decision) (citing 20 C.F.R. §§ 404.1535, 416.935). The claimant bears the burden "of proving that his

3

drug abuse and/or alcoholism are not contributing factors material to the determination of his disability." *Id.* (citing *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)).

When assessing the severity of a claimant's mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c); 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failing to acknowledge the Department of Veterans Affairs ("VA") decision awarding Claimant a disability rating of fifty percent; (2) improperly finding that alcohol was a contributing factor to the determination of disability; and (3) improperly assessing Claimant's credibility. Pl.'s Mem. of Law at 1-2, 9, 11, 16. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

The ALJ's decision followed the above-described sequential evaluation process, concluding at step five that Claimant had the RFC to perform other work. (R. 23). As such, the ALJ found Claimant "not disabled" as defined in the Act.

At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 22). Next, the ALJ determined Claimant had the following severe

4

impairments: (1) loss of vision in the right eye; (2) post-traumatic stress disorder ("PTSD"); (3) low back pain with arthritis; and (4) drug and alcohol abuse. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

> "[C]laimant's depression and drug and alcohol abuse resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace."

*Id.* at 20. At step three, the ALJ concluded that Claimant's "[PTSD] is exacerbated by episodic drug and alcohol use such that he meets Listings 12.06 [and 12.09] when he is using substances." *Id.* at 18, 23. In completing step three however, the ALJ determined that "[i]f the [C]laimant stopped using drugs and alcohol, his severe impairments would not meet or medically equal any of the listed impairments in [20 C.F.R. Part 404, Subpart P, Appendix 1], Regulation No. 4." *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] stand and walk six hours in an eight-hour workday, sit six hours in an eight-hour workday with the option to alternate positions every two hours, and perform simple, routine, repetitive tasks that do not require good depth perception or peripheral vision. *Id.* The ALJ found further that Claimant should avoid work at unprotected heights and around dangerous machinery and automotive equipment and should work in a low-production

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

environment. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible based upon the medical evidence. *Id.* at 19, 23. At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. *Id.* at 20, 23. Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as cashier II, gate guard and mail clerk. *Id.* at 23. The ALJ further found that Claimant's drug and alcohol abuse was a "contributing factor" to his disability, and that excluding such abuse, Claimant was not disabled. *Id.* at 22.

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was fifty-four years old and married with a sixteen year-old son. (R. 501). Upon attaining a twelfth grade education (R. 502), Claimant served with Army in the Vietnam War. (R. 502.03). At the time of the hearing, Claimant received monthly benefits from the VA for disability due to PTSD. *Id.* Claimant testified as to his work history, which included maintenance, repair and custodial duties and unloading bales of tobacco. (R. 504-06).

Claimant stated he is unable to perform his past work due to the loss of consciousness or blackouts (R. 507), a pinched nerve in the back (R. 509), arthritis in the back (R. 516), headaches (R. 510) and limited depth perception in the left eye and blindness in the right eye as the result of a detached retina (R. 511, 514). Claimant takes medication for treatment of his blackouts, which he has experienced since 1998. (R. 507-08). Claimant explained the VA medical personnel attributed this condition to an inner ear problem. (R. 508). Claimant explained further to losing

6

two jobs as a result of experiencing blackouts. *Id.* As a result of back pain, Claimant is incapable of lifting more than fifteen pounds and is unable to sit, walk or stand for very long. (R. 508, 513). Claimant testified to visiting Dr. Stein, his psychiatrist, every two or three months, for the blackouts, headaches and pain. (R. 510).

As a result of pain and drowsiness caused by his medication, Claimant spends the majority of the day on his back sleeping. (R. 508, 513, 515). He performs no household chores (R. 509, 514), watches a little TV (R. 513), occasionally plays a video game with his son and does not drive as he is unable to obtain a drivers license due to vision problems. (R. 514). Claimant testified that his wife prepares his bath and lays out his clothes, but that he is capable of dressing himself. (R. 515).

Regarding alcohol use, Claimant stated he drank heavily when he was younger but now drinks one beer every two weeks. (R. 516-17). Claimant explained further that his doctors indicated alcohol was not the cause of the blackouts. (R. 518). As for cocaine use, Claimant testified his usage was limited to the two times in which he blacked out and found himself in a crack house. (R. 517). Upon reporting these episodes to his VA psychiatrist, Claimant attended a counseling program. *Id.*

In response to questioning by Dr. Strahl, the ME, who sought clarification regarding Claimant's alcohol and drug use, Claimant explained that during his service in the Army, he drank up to four six-packs of beer, a pint or a fifth of a liter of liquor on a daily basis. (R. 520-21). However, upon his return from Vietnam, his drinking "more or less stopped." (R. 521). Claimant stated he last consumed alcohol about four months prior to the administrative hearing and that contrary to the opinion of his physicians, alcohol was not a problem for him. (R. 255,

7

526). With regard to cocaine use, Claimant testified that he used it in the Army only, with the exception of the one instance in which he visited a "crack" house while experiencing a blackout. (R. 522).

The ME also sought clarification as to Claimant's physical limitations as a result of Claimant's impairments. (R. 523-26). Claimant testified that he is unable to stand and lift and can sit only for thirty-five to forty minutes before needing to lie down. (R. 523-24). The ME noted that Claimant had been sitting at the hearing for an hour to which Claimant responded that his back was hurting. (R. 524-25). Claimant stated further that he experiences constant pain which is not alleviated with pain medication. (R. 525).

### III. Medical Expert's Testimony at the Administrative Hearing

Nathan Strahl, M.D. and Ph.D., a board-certified psychiatrist, testified as a ME at the administrative hearing. (R. 64-70, 518-33). After questioning Claimant, the ME stated that issues exist regarding Claimant's veracity issues given the discrepancies between Claimant's use of alcohol as reflected in the medical records and his testimony. (R. 526). The ME stated Claimant suffered from loss of vision in his right eye, arthritic changes in his back, PTSD and possible substance-induced mood disorder. (R. 527). The ME stated further that absent Claimant's alcohol and substance abuse, Claimant does not meet a Listing. (R. 529, 531). The ME explained that as a result of Claimant impairments and side effects from medications, Claimant could handle simple, routine tasks, must alternate sitting and standing and should avoid dangerous environments, heaving, lifting, stooping, bending and walking long distances. (R. 527, 529, 533). Upon questioning by Claimant's counsel, the ME stated the last indication of

8

alcohol or cocaine use in the record appear in a 17 December 2003 progress note and that no recent test indicates Claimant's use of cocaine. (R. 529-30).

## IV. Vocational Expert's Testimony at the Administrative Hearing

Ann T. Neulicht, Ph.D., testified as a VE at the administrative hearing. (R. 62-63, 533-48). After the VE's testimony regarding Claimant's past work experience (R. 535-39), the ALJ posed the following hypothetical:

> "[A]ssume a...person of the same age, education and past work of [Claimant]...[who is] confined to medium work, with the additional limitations that he should avoid unprotected heights, dangerous machinery, automotive equipment; and...due to the loss of vision in one eye, he has slight difficulty with depth perception and peripheral vision..... [H]e would only be able to do jobs in the realm of simple, repetitive tasks, in a job that has limited contact with the general public.

(R. 539). Asked further to assume the hypothetical individual could not perform any of Claimant's past work, the VE responded the individual could perform the following jobs at the unskilled, medium level: (1) kitchen helper - DOT 318.687-010, 2,000 positions regionally and 250,000 positions nationally; and (2) hand packager - DOT 920.587-018, 1,500 positions regionally and 150,000 positions nationally. (R. 541). The VE responded further that the individual could perform the following job at the unskilled, light level: garmet sorter - DOT 222.687-014, 500 positions regionally and 75,000 nationally. (R. 541-42).

The ALJ then posed the following hypothetical:

> "[A]ssume a...person of the same age, education and past work of [Claimant]...[who] is confined to light work..., need[s] a job that would accommodate a sit/stand option every two hours...[with the ability] to change position every two hours....[H]e should avoid unprotected heights, dangerous machinery, automotive equipment. [A] job would have to accommodate slight difficulty with depth perception and peripheral vision...[and] be in the realm of simple, repetitive tasks and a nonproduction job.

9

(R. 542). Upon clarifying no preclusion for contact with the public, the VE responded the individual could perform the following jobs at the light level, in addition to garmet sorter: (1) cashier II - DOT 211.462-010, SVP 2, 2,500 positions regionally and 250,000 positions nationally; (2) gate guard - DOT 372.667-030, SVP 3, 1,500 positions regionally and 75,000 nationally; (3) mail clerk - DOT 209.687-026, SVP 2, 1,000 positions regionally and 100,000 positions nationally. (R. 542-44). The VE testified further that no work would be available if the ALJ found Claimant's testimony credible. (R. 544). Upon questioning by Claimant's counsel, the VE confirmed that despite Claimant's limited vision, he could perform the above positions. (R. 545-47).

## DISCUSSION

I. **The ALJ's decision should not be remanded to evaluate the disability rating decision of the Department of Veterans Affairs.**

Claimant contends the ALJ's failure to discuss Claimant's VA disability rating as required by Social Security Ruling ("SSR") 06-03p constitutes error. Pl.'s Mem. at 1, 9-11; *see* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). For the reasons stated below, this Court disagrees.

After the ALJ issued his decision on 17 April 2006, but before the Appeals Council ruled on 10 August 2007, the Social Security Administration ("SSA") issued SSR 06-03p, clarifying, *inter alia*, the ALJ's responsibility in considering the disability decisions issued by other governmental agencies. *See* SSR 06-03p, 2006 WL 2329939. In particular, the ruling provides that the ALJ must (1) consider disability determinations of other governmental agencies, although such decisions are not binding; and (2) explain the consideration given these decisions. *Id.* at *7. Given SSR 06-03p became effective after the ALJ's decision, this Court does not fault the ALJ for failing to consider this ruling. While neither of the parties has addressed the issue

10

specifically, some courts have questioned whether SSR 06-03p applies retroactively, *see, e.g., Cruse v. Comm'r*, 502 F.3d 532, 541-42 (6th Cir. 2007) (declining to apply retroactively in regard to an 'other non-medical source' opinion); *but see Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007) (applying retroactively to cases on appeal and remanding case to ALJ to consider an 'other source' opinion) and no guidance exists from Fourth Circuit case law. However, assuming, without deciding, that SSR 06-03p applies retroactively, this Court finds that remand for formal application of SSR 06-03p is not warranted under the circumstances presented. *See Piney Mt. Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) ("If a reviewing court can discern what the ALJ did and why he did it, the duty of explanation is satisfied.") (citation and quotations omitted).

Claimant points out that the ALJ did not address the VA's service-connected disability rating; however, he provides no support regarding the implications of this omission on his disability determination. *See* Pl.'s Mem. at 9; (R. 194-98). Upon review of the VA's decision, this Court finds the VA's PTSD disability rating is consistent with the ALJ's finding. The medical records from the Durham Veterans Affairs Medical Center (VAMC) serve as the sole source of medical evidence of Claimant's PTSD, recognized as a severe impairment by the ALJ. (R. 22, 353-59, 380-482). Thus, similar to the VA, in supporting his finding regarding Claimant's PTSD, the ALJ specifically summarized Claimant's medical records from the VAMC and made reference to portions of the same. (R. 17-18, 19 ¶4, 194). Furthermore, despite Claimant's PTSD, both the VA and the ALJ reached the same conclusion, finding that Claimant's PTSD did not render Claimant incapable of working. (R. 23). In particular, the VA found "[t]he evidence of record does not show deficiencies in most areas, such as work, school, family

11

relations, judgment, thinking, or mood." (R. 197 ¶3). Similarly, the ALJ found Claimant capable of performing a significant range of light work. (R. 23).

The ALJ's decision was not based on a selective evaluation of the record. *Cf. Talley v. Astrue*, 2008 WL 867934, at * 2 (W.D. Va. Mar. 26, 2008) (remanding case due to ALJ's failure to weigh 'other source' opinion evidence contradicting evidence upon which the ALJ relied). Rather, the ALJ summarized all medical records, including the VAMC records relied upon by the VA.[2] Accordingly, this Court finds Claimant's argument unpersuasive.

## II. The ALJ improperly assessed Claimant's credibility.

Claimant contends the ALJ failed to analyze his subjective complaints of pain and other symptoms in the manner required by *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). This Court agrees.

In *Craig*, the Fourth Circuit established a two-part test for the determination of whether a claimant is disabled by pain or other symptoms. *Craig*, 76 F.3d at 594; *see also Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006). First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* SSR 96-7p, 1996 WL 374186, at *2. Second, once an underlying physical or mental impairment that could reasonably be

---

[2] Claimant also faults the ALJ for failing to discuss Claimant's 23 December 2003 and 25 February 2004 Global Assessment of Functioning ("GAF") scores. Pl.'s Mem. at 18; (R. 353, 471, 477). However, because the ALJ's written opinion documents the majority of Claimant's medical visits, including the VAMC evidence in which these scores were located (R. 17 ¶¶5-6), the ALJ's summary of Claimant's PTSD "enable[s]...[this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ is not required to discuss all evidence in the record. *Id.* (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required").

expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* The regulations list a number of factors for the ALJ to consider when assessing the credibility of a claimant's statements. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

Claimant testified that he suffered from dizzy spells, pain, blackouts, headaches, limited depth perception in one eye and blindness in the other as a result of his impairments. (R. 507, 509, 510-11, 514, 516). Despite Claimant's subjective complaints, the ALJ failed to address the threshold question of whether Claimant established by objective medical evidence an underlying medical impairment reasonably likely to produce the alleged pain and other symptoms. *See Craig*, 76 F.3d at 595. Rather, the ALJ proceeded directly to considering the credibility of Claimant's subjective allegations of pain and other symptoms. *See id.* Specifically, the ALJ found that Claimant "alleges greater limitations than can reasonably be supported by the objective findings concerning his condition." (R. 19). Thus, remand is required as the ALJ did not expressly consider step one and instead limited his analysis to step two. *See Craig*, 76 F.3d at 596 (holding the ALJ must "expressly consider the threshold question whether [claimant] had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges"). Further, despite Defendant's contention to the contrary, the ALJ's failure to perform the step one analysis is not "harmless." Mem. in Supp. of the Comm'r's Mot. for J. on the Pleadings at 27; *see Hill v. Comm'r of Soc. Sec.*, 49 F. Supp. 2d 865, 870 (S.D. W. Va. 1999) (remanding case for failure to complete step one despite defendant's contention that

13

such action would be a waste of judicial and administrative resources); *Bradley v. Barnhart*, 463 F. Supp. 2d 577, 582 (S.D. W. Va. 2006) (remanding case for ALJ's failure to address step one despite characterizing defendant's position that such failure is harmless as not "illogical").

As stated previously, this Court's review is limited to determining if substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman*, 829 F.2d at 517. Although Claimant's episodic use of drugs and alcohol and other evidence may support the ALJ's ultimate finding, the ALJ's failure to properly address the threshold question in *Craig* warrants a remand for further proceedings. *See Craig*, 76 F.3d at 595-96; *see also Gavigan v. Barnhart*, 261 F. Supp. 2d 334, 339 (D. Md. 2003) (noting remand is necessary even though the performance of the step two analysis by the ALJ suggests he reached a conclusion with respect to step one "because the court cannot speculate as to the ALJ's reasoning") (*citing Cook v. Heckler*, 783 F.2d 1168, 1174 (4th Cir. 1986) (remanding, in part, for failure to explain findings adequately)); *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (explaining that the "duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain")).

Because this Court finds that remand on the issue of credibility will affect the remaining issues raised by Claimant, it does not address these arguments.

## CONCLUSION

For the reasons stated above, this Court recommends Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation. The Clerk shall send copies of this Memorandum and

14

Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 30th day of June, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge